KENNY v KAATZ FUNERAL HOME, INC

Docket No. 248720. Submitted July 8, 2004, at Detroit. Decided October 12, 2004, at 9:10 a.m. Leave to appeal sought.

Elizabeth Kenny brought an action in the Macomb Circuit Court against Kaatz Funeral Home, Inc., and R & L Snow and Lawn Service, asserting premises liability involving the plaintiff's slip and fall on snow-covered ice in Kaatz's parking lot. The court, Deborah A. Servitto, J., granted summary disposition for the defendants, ruling that the slippery condition was open and obvious, special aspects were not present that could have created a uniquely high likelihood of harm or severity of harm, and the defendants had neither constructive nor actual notice of the condition of the parking lot. The plaintiff appealed the grant of summary disposition for Kaatz Funeral Home, Inc., arguing that the ice, unseen under the snow, was not open and obvious, it created an unreasonable risk of harm caused by a dangerous condition on the land, and the funeral home did have notice of the allegedly dangerous condition.

The Court of Appeals held:

1. The trial court erred in determining that the snow-covered ice in the parking lot was an open and obvious danger. There is evidence that the plaintiff did not recognize the ice-laden condition of the parking lot, and reasonable minds could differ in regard to whether a reasonably prudent person would have recognized the icy danger. Further, presuming the danger were open and obvious, there is a genuine issue of material fact regarding whether there were special aspects of the condition that rendered it unreasonably dangerous.

2. There was sufficient evidence presented to give rise to an issue of fact regarding whether the funeral home had knowledge or should have had knowledge of the ice under the snow before the plaintiff arrived. The owner had shoveled and salted other portions of the access to the funeral home and its parking lot, but not the relevant area. Further, because others also fell in the parking lot, the danger may have been unreasonably dangerous even if the snow-covered ice were determined by a jury to be open and obvious. These are issues of fact to be determined by a jury.

Reversed and remanded.

GRIFFIN, J., dissenting, stated that he would affirm the grant of summary disposition for the funeral home. Generally, a premises possessor owes a duty to use reasonable care to protect invitees from an unreasonable risk of harm caused by a dangerous condition of the premises. However, this duty does not extend to dangers that are open and obvious, unless special aspects of a condition make even an open and obvious risk unreasonably dangerous, in which case the possessor must take reasonable steps to protect invitees from harm. Whether a danger is open and obvious depends on whether it is reasonable to expect that an average person with ordinary intelligence would have discovered it upon casual inspection. Special aspects are those that give rise to a uniquely high likelihood of harm or severity of harm if the risk is not avoided. A common and avoidable condition is not dangerous. In this case, where the plaintiff saw her companions hold onto their car for support and saw that it was snowing, the trial court correctly ruled that reasonable minds could not differ that the slippery condition of the parking lot was open and obvious. The plaintiff also failed to present evidence of special aspects of the snow-covered and icy parking lot that created a uniquely high likelihood of harm or severity of harm. Ice and snow do not present special aspects that create a uniquely high likelihood of harm or severity of harm. The fact that there was only one parking spot left in the lot upon the plaintiff's arrival at the funeral home did not make the icy condition effectively unavoidable.

NEGLIGENCE — PREMISES LIABILITY — SNOW OR ICE HAZARD.

A premises owner must protect an invitee from a snow or ice hazard on the premises if the hazard is not open and obvious to a person of ordinary intelligence upon casual inspection or, if the hazard is open and obvious, special aspects exist that make the open and obvious hazard unreasonably dangerous.

*Law Offices of Samuel I. Bernstein* (by *Michael A. Weisserman*) for the plaintiff.

*Collins, Einhorn, Farrell & Ulanoff, P.C.* (by *Kevin P. Moloughney* and *Regina T. Delmastro*), for defendant Kaatz Funeral Home, Inc.

Before: MURPHY, P.J., and GRIFFIN and WHITE, JJ.

MURPHY, P.J. Plaintiff Elizabeth Kenny appeals as of right the trial court's order granting defendant Kaatz Funeral Home, Inc., summary disposition pursuant to MCR 2.116(C)(10) in this premises liability action involving a slip and fall on snow-covered ice in defendant's parking lot.[1] We reverse.

In December 2001, plaintiff, who was seventy-eight years old at the time, and four companions drove to defendant's funeral home to attend a coworker's funeral. After plaintiff left the car and while she was walking near the rear of the car in the funeral home parking lot, she slipped and fell, fracturing her hip. The following pertinent excerpts come from the transcript of plaintiff's deposition:

*Q.* When you got into the parking lot at I guess 6:30 or quarter to 7:00 was it light, dark, do you remember?

*A.* Dark, dark.

\* \* \*

*Q.* And the parking lot. I assume you said it was snowing. I assume you couldn't see the lines on the—

A. It was just like—it wasn't real bad. It was just like a snowflake then, a dusting on the road . . . .

\* \* \*

*Q.* When you pulled into the parking lot, could you see the yellow line?

*A.* You couldn't see any line at all, no.

*Q.* And why is that?

*A.* Because it was covered with snow.

---

[1] The trial court also summarily dismissed plaintiff's claims against defendant R & L Snow and Lawn Service (R & L). Plaintiff does not challenge on appeal that dismissal. Reference to "defendant" in this opinion pertains solely to defendant Kaatz Funeral Home.

*   *   *

*Q.*  Could you see any pavement at all or was it all snow covered?

*A.*  Snow covered.

*   *   *

*Q.*  When you were walking or after you fell did you notice how thick the snow was, how deep it was?

*A.*  It was snow covered. Then it was ice. It was black ice. You couldn't see the ice there. [Plaintiff subsequently indicated that the snow was at least one inch deep.]

*   *   *

*Q.*  And I'm sure you've seen many, many snowfalls over your years, right?

*A.*  Yeah.

*Q.*  And I assume you've walked through the snow a number of times; is that correct?

*A.*  Yeah. I used to walk waist deep.

*Q.*  And you're aware that snow can be slippery; is that correct?

*   *   *

*A.*  The snow wasn't slippery. The ice was underneath it.

*   *   *

*Q.*  So it's your claim that the ice you slipped on was covered by snow; is that correct?

*A.*  Yes, it was.

*Q.*  Could you see the ice?

*A.*  Not until I fell.

*   *   *

*A.* Not until after I fell.

*Q.* After you fell did you see the ice?

*A.* Yes, because the snow was—where my body was it was all pushed aside.

*Q.* Well, what did you see? Describe it for me.

*A.* It was like a black ice. It was the color of the—the color of the pavement.

\* \* \*

*Q.* You indicated it was dark out at the time of the fall?

\* \* \*

*A.* Yes.

*Q.* Did that make it harder to see?

\* \* \*

*A.* Yes.

Richard Kaatz, defendant's president and primary shareholder, testified in his deposition that it had snowed earlier in the day on the date of the accident, stopped for a while, and then resumed snowing in the evening. He indicated that it was dark around 5:00 p.m. during that time of the year. Kaatz arrived at the funeral home around 5:00 p.m., and he observed that snow had covered the parking lot. He did not believe that it had snowed the previous two or three days.

Defendant moved for summary disposition, arguing that it had neither actual nor constructive notice of the allegedly dangerous condition and, at the same time, argued that the condition of the parking lot was open and obvious and not unreasonably dangerous. The trial court granted the motion for summary disposition, finding that defendant had no notice of the alleged

hazard, that no genuine issue of material fact existed with respect to whether the condition of the parking lot was open and obvious, and that no genuine issue of material fact existed in regard to whether any special aspects made the condition unreasonably dangerous, in spite of its open and obvious condition. The trial court, in relation to the open and obvious danger analysis, relied on the fact that plaintiff had testified in her deposition that before her fall, she saw others get out of the vehicle and hang onto the car. The court also relied on plaintiff's testimony that she had lived in Michigan all her life and had witnessed many snowfalls. The trial court noted that, "[a]s a lifelong resident of Michigan, she should have been aware that ice frequently forms beneath snow during snowy December nights."

This Court reviews de novo a trial court's decision on a motion for summary disposition. *Koenig v South Haven,* 460 Mich 667, 674; 597 NW2d 99 (1999) (opinion by TAYLOR, J.). Issues of law are also reviewed de novo. *Mahaffey v Attorney General,* 222 Mich App 325, 334; 564 NW2d 104 (1997).

MCR 2.116(C)(10) provides for summary disposition where there is no genuine issue as to any material fact and the moving party is entitled to judgment or partial judgment as a matter of law. "A trial court may grant a motion for summary disposition under MCR 2.116(C)(10) if the affidavits or other documentary evidence show that there is no genuine issue in respect to any material fact, and the moving party is entitled to judgment as a matter of law." *Quinto v Cross & Peters Co,* 451 Mich 358, 362; 547 NW2d 314 (1996). In addition, all affidavits, pleadings, depositions, admissions, and other documentary evidence filed in the action or submitted by the parties are viewed in a light most favorable to the party opposing the motion.

"Where the burden of proof at trial on a dispositive issue rests on a nonmoving party, the nonmoving party may not rely on mere allegations or denials in the pleadings, but must go beyond the pleadings to set forth specific facts showing that a genuine issue of material fact exists." *Id.* Where the opposing party fails to present documentary evidence establishing the existence of a material factual dispute, the motion is properly granted. *Id.* at 363. "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp,* 469 Mich 177, 183; 665 NW2d 468 (2003) (citations omitted).

A premises owner owes, in general, a duty to an invitee to exercise reasonable care to protect the invitee from an unreasonable risk of harm caused by a dangerous condition on the land. *Lugo v Ameritech Corp, Inc,* 464 Mich 512, 516; 629 NW2d 384 (2001). This duty, however, does not generally encompass removal of open and obvious dangers. *Id.* Where the dangers are known to the invitee or are so obvious that the invitee might reasonably be expected to discover them, the invitor owes no duty to protect or warn the invitee unless he should anticipate the harm despite knowledge of it on behalf of the invitee. *Id.*, quoting *Riddle v McLouth Steel Products Corp,* 440 Mich 85, 96; 485 NW2d 676 (1992). Whether a particular danger is open and obvious depends on whether it is reasonable to expect an average user of ordinary intelligence to discover the danger upon casual inspection. *Eason v Coggins Mem Christian Methodist Episcopal Church,* 210 Mich App 261, 264; 532 NW2d 882 (1995). In determining whether an alleged dangerous condition is open and obvious, the focus is on the characteristics of a reasonably prudent person. *Mann v Shusteric Enterprises, Inc,* 470 Mich 320, 329 n 10; 683

NW2d 573 (2004). Because the test is objective, courts look not to whether a particular plaintiff should have known that the condition was hazardous, but to whether a reasonable person in his position would foresee the danger. *Joyce v Rubin,* 249 Mich App 231, 238-239; 642 NW2d 360 (2002). "In sum, the general rule is that a premises possessor is not required to protect an invitee from open and obvious dangers, but, if special aspects of a condition make even an open and obvious risk unreasonably dangerous, the premises possessor has a duty to undertake reasonable precautions to protect invitees from that risk." *Lugo, supra* at 517. Only those special aspects that create a uniquely high likelihood of harm or severity of harm if the risk or hazard is not avoided will serve to remove that condition from the open and obvious danger doctrine. *Id.* at 518-519.

Our Supreme Court in *Mann* recently addressed the matter of snow and ice accumulation in the context of the open and obvious danger doctrine. The Court ruled:

> Under *Lugo,* a premises possessor must protect an invitee against an "open and obvious" danger only if such danger contains "special aspects" that make it "unreasonably dangerous." *Lugo, supra* at 517. Thus, in the context of an accumulation of snow and ice, *Lugo* means that, *when such an accumulation is "open and obvious,"* a premises possessor must "take reasonable measures within a reasonable period of time after the accumulation of snow and ice to diminish the hazard of injury to [plaintiff]" only if there is some "special aspect" that makes such accumulation "unreasonably dangerous." [*Mann, supra* at 332 (emphasis added).]

The language from *Mann* emphasized by us makes clear that not all snow and ice accumulation is open and obvious. In *Quinlivan v The Great Atlantic & Pacific Tea Co, Inc,* 395 Mich 244, 260-261; 235 NW2d 732 (1975), the Supreme Court rejected "the prominently

cited notion that ice and snow hazards are obvious to all and therefore may not give rise to liability." The *Mann* decision affected *Quinlivan* as directly indicated in *Mann*, in which the Court stated:

> *Quinlivan* . . . must be understood in light of this Court's subsequent decisions in *Bertrand* [*v Alan Ford, Inc*, 449 Mich 606; 537 NW2d 185 (1995)] and *Lugo*. Concerning the duty of care a homeowner or other premises possessor owes to an invitee arising from the accumulation of ice and snow, Justice WEAVER relies in her concurrence/dissent on *Quinlivan* and asserts that "premises possessors owed a duty to invitees to take 'reasonable measures . . . within a reasonable time after an accumulation of ice and snow to diminish the hazard of injury to the invitee.' " The majority is unprepared to hold that, absent any special aspects, and absent consideration of the open and obvious nature of a hazard, a homeowner or other premises possessor owes an absolute duty to an invitee to diminish the hazards attendant to the accumulation of ice and snow. [*Mann; supra* at 333 n 13 (citation omitted).]

We read *Mann* as holding that the open and obvious danger doctrine and principles concerning special aspects are equally applicable to cases involving the accumulation of snow and ice. *Mann* does not stand for the proposition that *all* accumulations of snow and ice are open and obvious. Our interpretation of *Mann* and the Supreme Court's discussion of *Quinlivan* are that, if a snow or ice hazard is not open and obvious, or, if the hazard is open and obvious but special aspects exist, the premises owner owes a duty to an invitee to exercise reasonable care to protect the invitee from the snow or ice hazard. In such cases, *Quinlivan's* standard that "reasonable measures be taken within a reasonable time after an accumulation of ice and snow to diminish the hazard of injury to the invitee" remains applicable. *Quinlivan, supra* at 261.

The question presented to us, as we see it, is whether it can be said, *as a matter of law,* that a reasonably prudent person with ordinary intelligence would have been able to perceive and foresee the dangerous condition, i.e., black ice under a coating of snow, upon casual inspection.[2] We conclude that the answer is "no." Rather, reasonable minds could differ regarding the open and obvious nature of black ice under snow; therefore, the openness and obviousness of the danger must be determined by a jury. Clearly, the black ice, as a latent danger, was not visible, which detracts from a finding that the danger was open and obvious upon casual inspection. There is no indication in the record that there had been any previous rainfall or extensive thawing that might put one on notice of the presence of ice under snow that subsequently fell. We also note that, according to plaintiff's deposition testimony, one of plaintiff's companions slipped at the same time plaintiff slipped and fell, or immediately thereafter, and a third unknown person slipped and fell in the same spot as plaintiff shortly after plaintiff's spill. This evidence could call into question whether the danger was indeed open and obvious to reasonably prudent persons. A jury made up of Michiganders, not a court as a matter of law, is the appropriate arbiter in determining whether the danger was open and obvious, taking fully into consideration the condition of the parking lot as it existed at the time of the fall. It can be argued that the presence of snow should have placed plaintiff on notice to be careful in walking such that the same care would have protected against a fall on ice. However, it can hardly be disputed that the danger of walking on ice

---

[2] Because we view the evidence in a light most favorable to plaintiff for purposes of summary disposition, we proceed by accepting plaintiff's deposition testimony that she slipped and fell on black ice covered by a layer of snow.

is far greater than merely walking on snow alone, and a reasonably prudent person would proceed much more cautiously when observing that ice is being traversed rather than snow.[3]

On remand, and as stated in *Mann, supra* at 330, "in determining whether defendant breached its duty, the fact-finder must decide only whether a reasonably prudent person would have slipped and fallen on the ice and snow in defendant's parking lot, or whether that reasonably prudent person should have been warned by defendant of the dangerous condition."[4]

---

[3] With respect to plaintiff's companions holding the car as they maneuvered toward the funeral home, we find that the evidence is subject to reasonable interpretations other than solely the one surmised by the trial court. There are numerous reasons someone may have been holding onto the car, including age and general difficulty walking. Although not entirely clear from the record, it appears that plaintiff's four companions were elderly women of ages comparable to plaintiff's. We also note that plaintiff did not specifically testify that she recognized that her companions were holding the car because of ice on the lot. Further, plaintiff's testimony makes clear that her three other companions, who "hung on to the hood and walked up to the funeral home" walked "alongside of the car and they went out the front way" while plaintiff and the driver, who also fell, walked around the back of the car to avoid walking between the cars. The dissent admonishes us for speculating about the reasons plaintiff's companions held onto the car, yet the dissent's own conclusion that they grasped the car because it was slippery is speculative. There is no documentary evidence to support the conclusion that icy conditions caused plaintiff's elderly companions to hold the car. As the moving party under MCR 2.116(C)(10), defendant had the duty to provide supporting documentary evidence, MCR 2.116(G)(3)(b), and until such supporting evidence was presented, plaintiff did not have to counter it with her own documentary evidence, MCR 2.116(G)(4) ("When a motion under subrule (C)(10) is made *and supported as provided in this rule,* an adverse party may not rest upon the mere allegations . . . ." [emphasis added].). Our inference is as reasonable as the dissent's inference, and it is left for the jury to decide the matter.

[4] The dissent criticizes us by asserting that our focus is improperly placed on plaintiff's subjective knowledge of the condition rather than applying an objective standard. The language from our opinion, which

This Court's decision in *Joyce, supra,* in which the plaintiff fell on a snow-covered sidewalk, and in which the Court found that the danger was open and obvious, does not compel a similar conclusion here. *Joyce* is factually distinguishable. The *Joyce* panel, in support of its decision, noted the following factual circumstances:

> Joyce testified during her deposition that it snowed lightly the morning of March 10 and that, when she arrived at Barry Rubin's house, she saw snow on the driveway and snow on the sidewalk. Further, Joyce stated that she watched where she walked on the sidewalk and walked very carefully because she knew the sidewalk was "not very safe." Joyce also acknowledged that she slipped on snow that had fallen but had not yet melted, that she knew the sidewalk was slippery, that she repeatedly told Debra Rubin it was slippery, and that she slipped twice while walking on the sidewalk before she finally fell.

> Contrary to Joyce's arguments on appeal, her testimony establishes beyond peradventure that she saw the snow *and* recognized that the snow posed a safety hazard to her. Further, Joyce's testimony establishes that she felt the slippery texture of the snow (or ice underneath the snow) when she slipped twice before falling. Because Joyce lost her footing twice on the sidewalk, she was undoubtedly aware of the condition and the specific, potential danger of slipping before she fell. Under similar circumstances, an average person with ordinary intelligence would not only have seen the snowy condition of the sidewalk, but would have discovered the risk of slipping on it. Thus, subjectively and objectively, no reasonable juror could have concluded that the condition of the sidewalk and the danger it presented was not open and obvious. . . . [*Id.* at 239-240 (emphasis in original).]

---

the dissent quotes to support his contention, however, is taken out of context and is merely a discussion of the distinguishing features between the case at bar and *Joyce.* As clearly reflected in our repeated references to a "reasonably prudent person," we have indeed applied an objective standard.

Here, although plaintiff did observe a light dusting of snow, she testified that she did not see the ice that was covered by the snow and that allegedly caused her fall. Considering that "black ice" coated the area, it is questionable that the ice would be observable even without the snow covering it. There was no testimony that plaintiff knew that the lot was sheeted with ice before she walked from the car toward the funeral home. Plaintiff never told anyone that the lot was slippery, nor had she slipped in the lot before the fall like the plaintiff in *Joyce*. There was also no evidence that plaintiff felt the presence of ice before falling.

Further, defendant's reliance on *Perkoviq v Delcor Homes—Lake Shore Pointe, Ltd,* 466 Mich 11; 643 NW2d 212 (2002), is misplaced. The *Perkoviq* Court stated, "There was nothing hidden about the frost or ice on the roof, and anyone encountering it would become aware of the slippery conditions." *Id.* at 16. Here, when viewing the evidence in a light most favorable to plaintiff, the black ice was indeed hidden and not observable on encountering it.

This Court's decision in *Corey v Davenport College of Business (On Remand),* 251 Mich App 1; 649 NW2d 392 (2002), likewise does not compel affirmance of the order granting summary disposition. In *Corey,* the plaintiff slipped and fell on snowy and icy steps located outside one of the defendant's dormitories. This Court, in concluding that the hazard was open and obvious, stated that the "[p]laintiff is a reasonable person who recognized the snowy and icy condition of the steps and the danger the condition presented." *Id.* at 5. Here, again, there is evidence that plaintiff did not recognize the ice-laden condition of the parking lot, and we conclude that reasonable minds could differ in regard to whether

a reasonably prudent person would have recognized the icy danger.

We hold that the trial court erred in granting summary disposition pursuant to the open and obvious danger doctrine. We further conclude that there is a genuine issue of material fact regarding whether there were special aspects of the condition that rendered it unreasonably dangerous. Our Supreme Court in *Lugo, supra* at 518, providing examples of "special aspects," stated as follows:

> An illustration of such a situation might involve, for example, a commercial building with only one exit for the general public where the floor is covered with standing water. While the condition is open and obvious, a customer wishing to exit the store must leave the store through the water. In other words, the open and obvious condition is effectively unavoidable. Similarly, an open and obvious condition might be unreasonably dangerous because of special aspects that impose an unreasonably high risk of severe harm. To use another example, consider an unguarded thirty foot deep pit in the middle of a parking lot. The condition might well be open and obvious, and one would likely be capable of avoiding the danger. Nevertheless, this situation would present such a substantial risk of death or severe injury to one who fell in the pit that it would be unreasonably dangerous to maintain the condition, at least absent reasonable warnings or other remedial measures being taken.

As noted earlier, "only those special aspects that give rise to a uniquely high likelihood of harm or severity of harm if the risk or hazard is not avoided will serve to remove that condition from the open and obvious danger doctrine." *Id.* at 518-519. There is no indication in *Lugo* that the examples or illustrations of special aspects provided in the opinion reflect the only situations where special aspects can arise.

Here, there was evidence that the parking space utilized by plaintiff was the only remaining vacant spot in the entire lot and that plaintiff was a passenger in the vehicle, not the driver with control over the automobile. Moreover, others fell in the parking lot, which could lead reasonable minds to conclude that the parking lot remained unreasonably dangerous even assuming the danger was open and obvious. Accordingly, should the jury determine that the danger or hazard was open and obvious, an issue of fact would still have to be resolved by the jury in regard to whether special aspects existed such that the danger remained unreasonably dangerous, with the jury taking into consideration all the surrounding circumstances presented to plaintiff that snowy December day.

Finally, it is necessary to address the trial court's ruling that summary disposition was also proper where plaintiff failed to convince the court that defendant had notice of the hazard. The invitor's duty to invitees is " 'to exercise reasonable care to protect the invitees from an unreasonable risk of harm caused by a dangerous condition of the land' that the landowner knows or should know the invitees will not discover, realize, or protect themselves against." *Bertrand v Alan Ford, Inc,* 449 Mich 606, 609; 537 NW2d 185 (1995) (citations omitted). We conclude that an issue of fact exists with respect to whether defendant knew or should have known about the dangerous condition and the possibility that plaintiff would not discover the danger. The documentary evidence submitted to the trial court indicates that Richard Kaatz arrived at the funeral home one to two hours before plaintiff, and he indicated that it had snowed earlier that day, stopped snowing, and then began snowing again in the evening. He

further testified that there was snow on the ground in the lot at the funeral home when he arrived. Additionally, Katz testified:

> *Q.* And at that point in time you pulled out— somewhere around 5:15, 5:30, 5:45 you pulled out a shovel, you pushed some snow around the entrances, and you pushed a path from you said the handicapped parking area, correct?
>
> *A.* And salted.
>
> *Q.* And you salted, correct?
>
> *A.* Correct.

Besides claiming that he salted the entrances and the handicapped parking area, Kaatz also stated that he salted other areas of the parking lot, but not specifically the spot where plaintiff fell. The fact that Kaatz was salting areas of the parking lot and the entrances suggests that he was aware of slippery conditions on defendant's property and should have been aware of slippery conditions where plaintiff fell.

Moreover, the deposition testimony of R & L's owner indicated that his company salted a lot within six miles of the funeral home on the day of the accident, that the company plowed the funeral home's lot on that same day between 4:00 p.m. and 4:45 p.m. pursuant to a call from Kaatz, and that the conditions called for salting at the funeral home, but that salting was not undertaken because there was no request for salting nor an agreement that R & L would be paid for salting when plowing if salting is done without request.

The evidence presented is sufficient to give rise to an issue of fact regarding whether defendant had knowledge or should have had knowledge of the ice under the snow before plaintiff's arrival at the funeral home.

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

WHITE, J., concurred.

GRIFFIN, J. (*dissenting*). In this premises liability action, plaintiff Elizabeth Kenny appeals as of right the circuit court's order granting defendant Kaatz Funeral Home, Inc., summary disposition under MCR 2.116(C)(10). I would affirm and therefore respectfully dissent.

I

On December 27, 2001, plaintiff and four companions drove to defendant Kaatz Funeral Home to attend the funeral of a coworker. It was snowing and they parked their car in defendant's snow-covered parking lot, in a space near the front door of the building. Before getting out of the car into the snowy parking lot, plaintiff observed *three* of her companions holding onto the hood of the car for support. Thereafter, as plaintiff walked around the back of the vehicle toward the passenger side, she slipped and fell. As a result, plaintiff fractured her hip. According to plaintiff, she slipped and fell on clear, "black ice" that was camouflaged by a layer of snow.

Plaintiff filed suit, and defendant moved for summary disposition, arguing that (1) the slippery condition of the parking lot was open and obvious, (2) "special aspects" were not present regarding this snowy and icy parking lot that, in Michigan on December 27, would create "a uniquely high likelihood of harm or severity of harm," and (3) defendant had neither actual nor constructive notice of the allegedly dangerous condition of the parking lot. The trial court granted defendant's motion on all three grounds.

We review de novo a trial court's decision to grant or deny summary disposition. *Veenstra v Washtenaw Country Club*, 466 Mich 155, 159; 645 NW2d 643 (2002);

*Travelers Ins Co v Detroit Edison Co*, 465 Mich 185, 205; 631 NW2d 733 (2001). A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). The trial court must consider affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in a light most favorable to the nonmoving party. *Id.* Summary disposition in favor of the moving party is warranted when the proffered evidence fails to establish a genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. *Id.*; MCR 2.116(C)(10), (G)(4). In presenting a C(10) motion, the moving party has the initial burden of supporting its position by affidavits, depositions, admissions, or other documentary evidence. *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). "The burden then shifts to the opposing party to establish that a genuine issue of disputed fact exists." *Id.* The nonmoving party may not rely on mere allegations or denials in pleadings, but must set forth specific facts showing that a genuine issue of material fact exists. *Id.* "If the opposing party fails to present documentary evidence establishing the existence of a material factual dispute, the motion is properly granted." *Id.* at 363.

II

Generally, a premises possessor owes a duty to use reasonable care to protect invitees from an unreasonable risk of harm caused by dangerous conditions on the premises. *Lugo v Ameritech Corp, Inc*, 464 Mich 512, 516; 629 NW2d 384 (2001), citing *Bertrand v Alan Ford, Inc*, 449 Mich 606, 609; 537 NW2d 185 (1995). However, this duty does not extend to dangers that are open and obvious, unless special aspects of a condition make even

an open and obvious risk unreasonably dangerous, in which case the possessor must take reasonable steps to protect invitees from harm. *Lugo, supra* at 517. Whether a danger is open and obvious depends on whether it is reasonable to expect that an average person with ordinary intelligence would have discovered it upon casual inspection. *Joyce v Rubin*, 249 Mich App 231, 238; 642 NW2d 360 (2002); *Novotney v Burger King Corp (On Remand)*, 198 Mich App 470, 474-475; 499 NW2d 379 (1993). Special aspects are those that "give rise to a uniquely high likelihood of harm or severity of harm if the risk is not avoided . . . ." *Lugo, supra* at 519. Neither a common condition nor an avoidable condition is uniquely dangerous. *Corey v Davenport College of Business (On Remand)*, 251 Mich App 1, 8-9; 649 NW2d 392 (2002).

Citing *Quinlivan v Great Atlantic & Pacific Tea Co, Inc*, 395 Mich 244, 261; 235 NW2d 732 (1975), which "reject[ed] the prominently cited notion that ice and snow hazards are obvious to all and therefore may not give rise to liability," plaintiff contends that the open and obvious doctrine does not preclude an invitor's duty to remove snow and ice. However, subsequent decisions of our Supreme Court and this Court have applied the open and obvious doctrine to snow and ice cases, see *Perkoviq v Delcor Homes—Lake Shore Pointe, Ltd*, 466 Mich 11; 643 NW2d 212 (2002), and *Joyce, supra*. Further, in *Corey, supra* at 8, this Court noted that the rule in *Quinlivan* has evolved in light of more recent cases:

> [T]here is some suggestion that ice and snowy conditions may constitute an "exception" to the open and obvious danger doctrine. After analyzing both *Lugo* and *Joyce*, we conclude that these prior analyses in *Quinlivan* and *Bertrand* on the interplay between the open and obvious danger doctrine when it involves snow and ice and the newly refined definition of open and obvious in *Lugo*

can only mean that the snow and ice analysis in *Quinlivan* is now subsumed in the newly articulated rule set forth in *Lugo*. Specifically, the analysis in *Quinlivan* will now be part of whether there are special aspects of the condition that make it unreasonably dangerous even if the condition is open and obvious.

Plaintiff nonetheless argues that the open and obvious doctrine does not apply to the present circumstances because the black ice took on the color of the asphalt pavement beneath it and was not easily visible on casual inspection, the ice was virtually undetectable in the evening darkness, and the ice was hidden and camouflaged by a layer of snow. I disagree for the reasons articulated by the trial court in its well-written opinion granting summary disposition to defendant:

> The evidence shows that on the date in question, Kenny and several others had traveled to Kaatz's premises for the purpose of paying their respects to a deceased co-worker. The funeral home was approximately 40 miles from Kenny's home, where she was picked up by the driver, Marge Contesti ("Contesti"). Kenny observed that it started to snow on the way to their destination. They arrived at the funeral home at 6:30 P.M. or 6:45 P.M., at which time it was dark outside. Contesti parked in the only available space in the lot. The snow in the lot "wasn't real bad;" instead, it was merely "a dusting on the road."
>
> Kenny exited the vehicle last. Two of the others were on the entrance steps at the time that Kenny fell. She was alongside the back of the car when her accident occurred. Further, she fell in a driveway, rather than in the parking space.
>
> Kenny indicated that the snow was at least an inch deep at the time of her accident. She described the weather as "just a few flakes in the air" rather than a snowstorm. Kenny was walking beside Contesti when both of her feet went up into the air, and she fell on her right hip. Contesti also slipped. Kenny did not see any of her other friends fall; however, she noticed that they "hung onto the car" when

they exited the vehicle. She did not know if she had been looking at the ground just prior to her accident.

Kenny did not see the ice until she fell because it was covered by snow. In this regard, she described the condition as "black ice," the color of the pavement. She did not know how thick the ice was or how long it had been in that area. Moreover, she did not know how long it had been snowing. It did not appear that the snow had been plowed or that anyone had thrown salt on the ice. Seventy-nine-year-old Kenny had lived in Michigan all of her life and had witnessed many snowfalls.

Contrary to Kenny's assertion, the Court finds that the "open and obvious" doctrine applies to the instant case. *See, e.g., Perkoviq, supra; Joyce, supra.* The Court further determines that the alleged hazard had been "open and obvious" to an individual of average intelligence. . . . Kenny acknowledged that, before she exited the vehicle, she had observed the others hang onto it for support. That alone should have clued her into the possible danger that awaited her outside the vehicle. She also conceded that it had been snowing outside. As a lifelong resident of Michigan, she should have been aware that ice frequently forms beneath snow during snowy December nights. In any event, she could not even recall whether she had been watching where she was walking. The Court points out that Kaatz was not an absolute insurer of Kenny's safety. *Bertrand, supra.* [Citations for depositions deleted.]

Under these facts, the trial court correctly ruled that reasonable minds could not differ that the slippery condition of the parking lot was open and obvious. *Novotney, supra; Corey, supra;* and *Joyce, supra.*

On this issue, I note that the focus of the majority is on the plaintiff's *subjective* knowledge of the condition,[1]

---

[1]  The majority reasons as follows:

Here, although plaintiff did observe a light dusting of snow, she testified that she did not see the ice that was covered by the snow and that allegedly caused her fall. Considering that "black ice"

rather than "whether 'an *average user* [an objective standard] with ordinary intelligence [would] have been able to discover the danger and the risk presented upon casual inspection.' " *Joyce, supra* at 238, quoting *Novotney, supra* at 475. In my view, after witnessing three companions exit a vehicle into the snow-covered parking lot on December 27 and seeing them holding on to the hood of the car to keep their balance, all reasonable Michigan winter residents would conclude that the snow-covered parking lot was slippery.

In n 3 of its opinion, the majority also states:

> With respect to plaintiff's companions holding the car as they maneuvered toward the funeral home, we find that the evidence is subject to reasonable interpretations other than solely the one surmised by the trial court. There are numerous reasons someone may have been holding on to the car, including age and general difficulty walking. Although not entirely clear from the record, it appears that plaintiff's four companions were elderly women of ages comparable to plaintiff's. We also note that plaintiff did not specifically testify that she recognized that her companions were holding the car because of ice on the lot. Further, plaintiff's testimony makes clear that her three other companions, who "hung on to the hood and walked up to the funeral home" walked "alongside of the car and they went out the front way" while plaintiff and the driver, who also fell, walked around the back of the car to avoid walking between the cars. [*Ante* at 109.]

The majority speculates that in the snow-covered parking lot "there are numerous reasons" all three of

---

coated the area, it is questionable that the ice would be observable even without the snow covering it. There was no testimony that plaintiff knew that the lot was sheeted with ice before she walked from the car toward the funeral home. Plaintiff never told anyone that the lot was slippery, nor had she slipped in the lot before the fall like the plaintiff in *Joyce*. There was also no evidence that plaintiff felt the presence of ice before falling. [*Ante* at 111.]

plaintiff's companions may have been holding on to the hood of the car for support. However, plaintiff offered no evidentiary support, through an affidavit or other documentary evidence, to rebut the reasonable inference that the slippery condition of the snow-covered parking lot caused the women to grasp the car for support. In opposing defendant's motion for summary disposition based on MCR 2.116(C)(10), plaintiff failed to offer admissible evidence supporting the speculation made by the majority. As our Supreme Court held in *Maiden v Rozwood*, 461 Mich 109, 121; 597 NW2d 817 (1999):

> The reviewing court should evaluate a motion for summary disposition under MCR 2.116(C)(10) by considering the substantively admissible evidence actually proffered in opposition to the motion. A reviewing court may not employ a standard citing the mere possibility that the claim might be supported by evidence produced at trial. A mere promise is insufficient under our court rules.

### III

Finally, plaintiff has presented no evidence of the alleged "special aspects" of the snow-covered and icy parking lot that created "a uniquely high likelihood of harm or severity of harm . . . ." *Lugo, supra* at 518-519; *Joyce, supra* at 242-243. Previously, this Court held that a layer of snow on a sidewalk did not constitute a unique danger creating a "risk of death or severe injury," *Joyce, supra* at 243, and that falling down ice-coated stairs likewise does not give rise to the type of severe harm contemplated in *Lugo*. *Corey, supra* at 6-7. Snow and ice in a Michigan parking lot on December 27 are a common, not unique, occurrence. Under the *Lugo, supra* at 518-519, definition of "special aspects," ice and snow do not present "a *uniquely high* likelihood of harm or severity of harm." *Joyce, supra* at 241-243 (emphasis added).

Plaintiff also argues that the allegedly icy condition was unavoidable because only one parking space in the lot was vacant when she and her companions arrived at the funeral home, and also because she was a passenger in the car and thus had no control over the parking of the car. However, these circumstances do not rise to the level of making her encounter with the allegedly icy condition "effectively unavoidable" such that it constituted an unreasonable risk of harm. See *Lugo, supra* at 518-519. Moreover, as the trial court noted, "[A] reasonable person would have been alerted to the possibility that it was slippery outside when she witnessed her friends support themselves on the vehicle as they exited [it]." Thus, plaintiff's argument that the slippery parking lot presented "special aspects" is without merit because the condition was both common and avoidable. *Corey, supra.*

I respectfully dissent and would affirm.[2]

---

[2] I would find resolution of the final question (whether defendant had actual or constructive knowledge of the condition) unnecessary in view of the disposition of the first two issues.