740 N.W.2d 547 (2007)
Theresa ROYCE and Carl Royce, Plaintiffs-Appellees/Cross-Appellants
v.
CHATWELL CLUB APARTMENTS, a/k/a Tobin Group, Defendant-Appellant/Cross-Appellee.
Docket No. 266682.
Court of Appeals of Michigan.
Submitted June 6, 2007, at Detroit.
Decided August 7, 2007, at 9:00 a.m.
Released for Publication October 26, 2007.
*548 Law Offices of Samuel I. Bernstein (by Michael A. Weisserman), Farmington Hills, for the plaintiffs.
Garan Lucow & Miller, P.C. (by Caryn A. Gordon), Detroit, for the defendant.
Before: SERVITTO, P.J., and JANSEN and SCHUETTE, JJ.
SERVITTO, P.J.
Defendant appeals by leave granted the circuit court's order denying in part its motion for summary disposition in this premises liability action involving a slip and fall. Plaintiffs cross-appeal as of right the same order granting in part defendant's motion for summary disposition under MCR 2.116(C)(10). Because the slippery condition of the parking lot where the fall occurred was open and obvious and no special aspect making the condition unreasonably dangerous existed, and because defendant could not rely on the open and obvious danger doctrine to avoid its statutory duty under MCL 554.139, we reverse and remand for further proceedings.
This case arises out of a slip and fall that occurred in defendant's parking lot on February 5, 2003, while plaintiffs resided at defendant's apartment complex. Plaintiff Theresa Royce[1] left her apartment at approximately 7:00 that evening intending to get into her vehicle, which was parked in front of her apartment. It was dark outside and snow covered the ground. As she stepped off the sidewalk into the parking lot, she slipped on snow-covered black ice and slid underneath her car. She did not see the ice before she fell and discovered it only after she tried to get up. She was seriously injured and ultimately underwent surgery on her left knee.
Defendant moved for summary disposition, arguing that the black ice in the parking lot was an open and obvious condition and that a lessor's duty under MCL 554.139 does not extend to snow and ice removal. The trial court denied defendant's motion for summary disposition as it pertained to plaintiff's common-law premises liability claim, but granted summary disposition to defendant on plaintiff's statutory duty claim. This appeal followed.
We review de novo a trial court's decision on a motion for summary disposition. Spiek v. Dep't of Transportation, 456 *549 Mich. 331, 337, 572 N.W.2d 201 (1998); Willis v. Deerfield Twp., 257 Mich.App. 541, 548, 669 N.W.2d 279 (2003). A motion for summary disposition under MCR 2.116(C)(10) is properly granted if no factual dispute exists, thus entitling the moving party to judgment as a matter of law. Rice v. Auto Club Ins. Ass'n, 252 Mich. App. 25, 31, 651 N.W.2d 188 (2002). In deciding a motion brought under subrule C(10), a court considers all the evidence, affidavits, pleadings, and admissions in the light most favorable to the nonmoving party. Id. at 30-31, 651 N.W.2d 188.
Defendant argues that the trial court erred by denying its motion for summary disposition regarding plaintiff's common-law claim because the dangerous condition of its premises was open and obvious and there existed no special aspects making the condition unreasonably dangerous. "In general, a premises possessor owes a duty to an invitee[[2]] to exercise reasonable care to protect the invitee from an unreasonable risk of harm caused by a dangerous condition on the land." Lugo v. Ameritech Corp., Inc., 464 Mich. 512, 516, 629 N.W.2d 384 (2001). This duty does not extend to open and obvious dangers, however, unless a special aspect of the condition makes even an open and obvious risk unreasonably dangerous. Id. at 517, 629 N.W.2d 384. In such cases, the premises possessor has a duty to take reasonable measures to protect invitees from that risk. Id.
"Whether a danger is open and obvious depends on whether it is reasonable to expect that an average person with ordinary intelligence would have discovered the danger on casual inspection." Teufel v. Watkins, 267 Mich.App. 425, 427, 705 N.W.2d 164 (2005). Generally, the hazard presented by snow and ice is open and obvious, and the landowner has no duty to warn of or remove the hazard. Id. at 428, 705 N.W.2d 164.
In Kenny v. Kaatz Funeral Home, Inc., 264 Mich.App. 99, 114, 689 N.W.2d 737 (2004) (Kenny I), rev'd 472 Mich. 929, 697 N.W.2d 526 (2005), this Court reversed the trial court's order granting the defendant funeral home summary disposition based on the open and obvious danger doctrine when the plaintiff slipped and fell on snow-covered black ice in the defendant's parking lot. In Kenny v. Kaatz Funeral Home, Inc., 472 Mich. 929, 697 N.W.2d 526 (2005) (Kenny II), however, our Supreme Court reversed this Court's decision for the reasons stated in Judge GRIFFIN'S dissent in Kenny I. In that case, the plaintiff argued that the open and obvious danger doctrine did not apply because the black ice took on the color of the pavement beneath the ice and was not easily visible, the ice was virtually undetectable in the darkness, and the ice was covered with snow. Kenny I, supra at 118, 689 N.W.2d 737 (GRIFFIN, J., dissenting). In his dissenting opinion, Judge Griffin adopted the trial court's reasoning, which noted that the plaintiff was 79 years old, had lived in Michigan her entire life, and had witnessed many snowfalls. Therefore, the trial court concluded that she should have been aware that ice frequently forms underneath snow. The trial court also noted that the plaintiff observed other persons traveling with her grab onto the car to keep their balance after getting out of the car. For these reasons, Judge GRIFFIN opined that the hazardous condition of the parking lot was open and obvious and that no special aspect existed that created a uniquely high *550 likelihood or severity of harm. Id. at 118-122, 689 N.W.2d 737.
In Ververis v. Hartfield Lanes (On Remand), 271 Mich.App. 61, 718 N.W.2d 382 (2006), this Court addressed whether the potential danger of a snow-covered surface is open and obvious in and of itself even absent some other factor indicating that the surface is slippery, such as the fact that persons held onto a car for balance in Kenny I. Regarding the trial court's opinion in Kenny I, later adopted by Judge GRIFFIN and our Supreme Court, this Court stated:
Thus, the trial court's reasoning suggested two possible rules. First, a snow-covered surface might always, by its very nature, present an open and obvious danger because it is likely to be slippery as a result of underlying ice or for some other reason. Alternatively, a snow-covered surface would not present an open and obvious danger unless there is some other reason, in the facts of a particular case, that would lead a plaintiff to reasonably conclude that it is slippery. [Ververis, supra at 65, 718 N.W.2d 382.]
The Ververis Court noted that the plaintiff in that case slipped and fell on a snow-covered surface while entering a bowling alley and that no other independent factor alerted him to the fact that the surface was slippery. Id. at 63, 66, 718 N.W.2d 382. This Court considered orders of our Supreme Court based on Kenny II and concluded as a matter of law that "by its very nature, a snow-covered surface presents an open and obvious danger because of the high probability that it may be slippery." Id. at 67, 718 N.W.2d 382. Thus, this Court held that the defendant bowling alley was entitled to a directed verdict even though no independent factor alerted the plaintiff to the danger. Id.
Applying the foregoing rule in the instant case, the potential danger posed by the snow-covered parking lot was open and obvious even absent some other factor suggesting that the surface was slippery. Plaintiff testified that snow covered the pavement and that her foot began to slide immediately when it touched the ground. She further testified:

A. I then fell on the right side of my right leg catching myself with my hand, I was just sliding all over the place. Before I knew it I was under the car. I couldn't stop sliding. It was just like I hit a sheet of ice.
* * *

Q. And I think you indicated for me earlier that you had no idea what caused you to fall until you were down on the ground?

A. Absolutely.

Q. And what did you determine had caused you to fall?

A. I was trying to gather myself out from under the car and it was just nothing but ice. When I started moving the snow it was just ice, just like a sheet of ice like this. Just ice everywhere under me.
Under Ververis, supra at 63, 718 N.W.2d 382, the potential slipperiness of the snow-covered parking lot was an open and obvious danger as a matter of law.
The question becomes, then, whether there existed a special aspect of the slippery condition of the parking lot that made the risk unreasonably dangerous and gave rise to a duty on behalf of defendant to take reasonable measures to protect invitees from the risk. Lugo, supra at 517, 629 N.W.2d 384. Defendant contends that the fact that plaintiff's vehicle was parked next to a parking space for the handicapped did not constitute a special aspect making the condition unreasonably dangerous.
*551 In Lugo, supra at 517-518, 629 N.W.2d 384, our Supreme Court stated:
[W]ith regard to open and obvious dangers, the critical question is whether there is evidence that creates a genuine issue of material fact regarding whether there are truly "special aspects" of the open and obvious condition that differentiate the risk from typical open and obvious risks so as to create an unreasonable risk of harm, i.e., whether the "special aspect" of the condition should prevail in imposing liability upon the defendant or the openness and obviousness of the condition should prevail in barring liability.
The Lugo Court stated that a special aspect creating an unreasonable risk of harm may exist where, for example, the floor of the sole exit of a commercial building is covered with standing water, requiring persons to enter and exit through the water and creating an unavoidable risk. Id. at 518, 629 N.W.2d 384. The Court also recognized that an unguarded 30-foot-deep pit in the middle of a parking lot would pose an unreasonably dangerous risk. Id. The Court stated that "only those special aspects that give rise to a uniquely high likelihood of harm or severity of harm if the risk is not avoided will serve to remove that condition from the open and obvious danger doctrine." Id. at 519, 629 N.W.2d 384.
The fact that the ice patch on which plaintiff fell was located near a handicapped parking space did not give rise to a uniquely high likelihood of harm or severity of harm. The risk of slipping and falling on ice is not sufficiently similar to those special aspects discussed in Lugo to constitute a uniquely high likelihood or severity of harm and remove the condition from the open and obvious danger doctrine. See Kenny I, supra at 121, 689 N.W.2d 737 (GRIFFIN, J., dissenting); see also Corey v. Davenport College of Business (On Remand), 251 Mich.App. 1, 6-7, 649 N.W.2d 392 (2002) (ice-covered steps did not create a uniquely high likelihood of harm or severity of harm). Moreover, whether the condition was unavoidable does not affect our determination because plaintiff was unaware of the condition in any event. According to plaintiff's testimony, she did not see the ice before she fell, and realized that she had fallen on black ice only after she tried to get up. Thus, whether an alternate route to her car existed, by which she could have avoided the patch of ice, is immaterial. Because the condition of the parking lot was open and obvious and no special aspect existed making the condition unreasonably dangerous, the trial court erred by denying defendant's motion for summary disposition regarding plaintiff's common-law premises liability claim.
On cross-appeal, plaintiff argues that the trial court erred by granting summary disposition for defendant on her statutory claim. MCL 554.139 provides, in pertinent part:
(1) In every lease or license of residential premises, the lessor or licensor covenants:
(a) That the premises and all common areas are fit for the use intended by the parties.
(b) To keep the premises in reasonable repair during the term of the lease or license, and to comply with the applicable health and safety laws of the state and of the local unit of government where the premises are located, except when the disrepair or violation of the applicable health or safety laws has been caused by the tenants [sic] wilful or irresponsible conduct or lack of conduct.
Plaintiff contends that defendant cannot rely on the open and obvious danger doctrine *552 to avoid its statutory obligation under this provision. We agree.
This Court recently addressed this issue in Allison v. AEW Capital Mgt., LLP (On Reconsideration), 274 Mich.App. 663, 736 N.W.2d 307 (2007), which involved identical facts. There, the plaintiff slipped and fell on ice and snow in the parking lot of his apartment complex. Id. at 665, 736 N.W.2d 307. This Court determined that its previous decision in Benton v. Dart Properties, Inc., 270 Mich.App. 437, 715 N.W.2d 335 (2006), regarding a slip and fall on an apartment complex sidewalk, was controlling and that a parking lot is a "common area" under MCL 554.139(1)(a). Id. at 670, 736 N.W.2d 307. This Court thus concluded that "a parking lot, like a sidewalk, constitutes a common area under MCL 554.139(1)(a) and that defendant had a duty to keep the parking lot free from ice." Id. at 671, 736 N.W.2d 307. Accordingly, this Court determined that the open and obvious danger doctrine did not shield the defendant from liability under the statute. Id. This Court's holding in Allison compels the same result in this case.
As pointed out in the dissent, there is a prior opinion that, if followed, would direct us to hold otherwise. In Teufel v. Watkins, supra at 429 n. 1, 705 N.W.2d 164, the Court stated in a footnote:
The plain meaning of "reasonable repair" as used in MCL 554.139(1)(b) requires repair of a defect in the premises. Accumulation of snow and ice is not a defect in the premises. Thus, a lessor's duty under MCL 554.139(1)(a) and (b) to keep its premises in reasonable repair and fit for its intended use does not extend to snow and ice removal.
We find Teufel inapplicable for two reasons. First, Teufel ignored the binding precedent set forth in O'Donnell v. Garasic, 259 Mich.App. 569, 676 N.W.2d 213 (2003). While O'Donnell addressed a fall from an open stairway inside a leased premises rather than a fall on ice or snow in an apartment complex parking lot, the rule of law announced in that case remains applicable here:
The open and obvious danger doctrine is not available to deny liability to an injured invitee or licensee on leased or licensed residential premises when such premises present a material breach of the specific statutory duty imposed on owners of residential properties to maintain their premises in reasonable repair and in accordance with the health and safety laws, as provided in MCL 554.139(1)(a) and (b). [Id. at 581, 676 N.W.2d 213.]
Second, the more recent cases addressing this issue (see Allison, supra; Benton, supra; Taylor-Floyd v. Consolidated Mgt, Inc, unpublished opinion per curiam of the Court of Appeals, issued April 26, 2007 [Docket No. 274061], 2007 WL 1229441; Marbly v. McKinley Assoc Inc, unpublished opinion per curiam of the Court of Appeals, issued March 27, 2007 [Docket No. 268580], 2007 WL 914315; Gotautas v. Marion Apartments of St. Clair, unpublished opinion per curiam of the Court of Appeals, issued November 16, 2006 [Docket No. 270785], 2006 WL 3334592) reiterate and follow the O'Donnell holding, reflecting a return from Teufel's deviation from binding precedent. Again, then, this Court's holding in Allison compels a finding that defendant could not rely on the open and obvious danger doctrine to avoid its statutory duty under MCL 554.139, and the trial court therefore erred by granting summary disposition for defendant on plaintiff's statutory claim.
Defendant argues that it nevertheless cannot be held liable for a statutory violation because it had no actual or constructive notice of the black ice in its parking lot. This issue is not preserved for *553 appeal because it was not raised in and decided by the trial court. Fast Air, Inc. v. Knight, 235 Mich.App. 541, 549, 599 N.W.2d 489 (1999). Although this Court may address an unpreserved issue if it involves a question of law and the facts necessary for its resolution have been presented, Sutton v. City of Oak Park, 251 Mich.App. 345, 349, 650 N.W.2d 404 (2002), we decline to address this issue because the necessary facts have not been presented. In particular, the record fails to disclose whether defendant had notice of the condition of the parking lot.
Reversed and remanded for further proceedings. We do not retain jurisdiction.
JANSEN, J., concurred.
SCHUETTE, J. (concurring in part and dissenting in part).
I concur in the portion of the majority opinion that reverses the trial court's denial of defendant's motion for summary disposition regarding plaintiffs' common-law premises liability claim. However, because I do not believe that the trial court erred in granting defendant's motion for summary disposition regarding plaintiffs' statutory claim, I must respectfully dissent from that portion of the opinion.[1]
I agree with the majority that plaintiffs' common-law premises liability claim failed to state a cause of action because the dangerous condition of the parking lot here in question  covered in icy, slippery snow  was open and obvious and contained no special aspects making the condition unreasonably dangerous. Kenny v. Kaatz Funeral Home, Inc., 472 Mich. 929, 697 N.W.2d 526 (2005) (Kenny II); Lugo v. Ameritech Corp., Inc., 464 Mich. 512, 629 N.W.2d 384 (2001); Ververis v. Hartfield Lanes (On Remand), 271 Mich.App. 61, 718 N.W.2d 382 (2006).
I disagree, however, with the majority's conclusion that the trial court erred in summarily dismissing plaintiff's statutory claim because Allison v. AEW Capital Mgt, LLP (On Reconsideration), 274 Mich. App. 663, 736 N.W.2d 307 (2007) (Allison II), controls the outcome of this case. As expressed below, I dissent primarily for procedural reasons  I believe that the Allison II panel erred in concluding that it was not bound by this Court's decision in Teufel v. Watkins, 267 Mich.App. 425, 705 N.W.2d 164 (2005)  and because I desire to provide the trial courts and the bar with a clear roadway when traversing the pitfalls of slip-and-fall cases involving icy pavements, sidewalks, and parking lots in a cold-weather state like Michigan.
The judicial meander on black ice and slippery parking lots commenced when our Supreme Court adopted Judge GRIFFIN'S dissent in the case of Kenny v. Kaatz Funeral Home, Inc., 264 Mich.App. 99, 689 N.W.2d 737 (2004) (Kenny I), rev'd 472 Mich. 929, 697 N.W.2d 526 (2005). Kenny II, supra. Kenny involved an icy, snow-covered parking lot. Kenny I, supra at 115, 689 N.W.2d 737 (GRIFFIN, J., dissenting). In that case, the plaintiff argued that the open and obvious danger doctrine did not apply because the dangerous condition at issue was black ice, which, by its very nature, is not readily noticeable. Id. at 118, 689 N.W.2d 737. However, Judge GRIFFIN concluded that the dangerous condition of the parking lot was open and obvious because "after witnessing three companions exit a vehicle into the snow-covered parking lot on December 27 and seeing them holding on to the hood of the car to keep their balance, all reasonable *554 Michigan winter residents would conclude that the snow-covered parking lot was slippery." Id. at 120, 689 N.W.2d 737. Further, because "[s]now and ice in a Michigan parking lot on December 27 are a common, not unique, occurrence," Judge GRIFFIN concluded that there were no special aspects of the dangerous condition of the parking lot that would negate application of the open and obvious danger doctrine. Id. at 121, 689 N.W.2d 737.
After Kenny, the question whether a snow-covered surface would always present an open and obvious danger arose, and this Court answered in the affirmative. Ververis, supra. In Ververis, after considering Judge GRIFFIN'S dissent in Kenny I, which was adopted by our Supreme Court in Kenny II, and our Supreme Court's orders issued after Kenny II, this Court held that "by its very nature, a snow-covered surface presents an open and obvious danger because of the high probability that it may be slippery." Ververis, supra at 67, 718 N.W.2d 382.
Paralleling these black-ice decisions was the decision in O'Donnell v. Garasic, 259 Mich.App. 569, 581, 676 N.W.2d 213 (2003), which stands for the proposition that the open and obvious danger doctrine cannot be used to avoid liability when the defendant has a statutory duty under MCL 554.139 to maintain the premises in reasonable repair. I am in agreement with this line of cases, which correctly applies the plain meaning of the language that the Legislature used by providing a statutory remedy to a plaintiff who has suffered an injury because of a lessor or licensor's failure to comply with his or her duty to keep residential premises and common areas fit for their intended use, to keep the premises in reasonable repair, and to comply with applicable state and local health and safety laws. See Laurendine v. CCA Assoc Ltd Partnership, unpublished opinion per curiam of the Court of Appeals, issued March 21, 2006 (Docket No. 257775), 2006 WL 707723; Rincones v. Kramer, unpublished opinion per curiam of the Court of Appeals, issued February 23, 2006 (Docket No. 256706), 2006 WL 445979; Hysni v. Cornwall Plumbing, Inc, unpublished opinion per curiam of the Court of Appeals, issued February 3, 2004 (Docket No. 243564), 2004 WL 203086.[2]
The black-ice journey continued with this Court's decision in Teufel, supra. In Teufel, the plaintiff was injured when he slipped and fell on ice near a pile of snow in the parking lot of his apartment complex, and this Court made at least three substantive rulings. First, the Teufel Court held that the snow and ice that plaintiff fell on were open and obvious and the Court affirmed the lower court's grant of summary disposition. Id. at 428-429, 705 N.W.2d 164. Second, the Teufel Court held that MCL 554.139 does not impose a duty upon a landlord to keep a parking lot free from ice and snow, which might cause someone to slip and become injured. Id. at 429 n. 1, 705 N.W.2d 164. This dispositive ruling was made in a footnote. Finally, the Teufel Court, relying on our Supreme Court's decision in Fultz v. Union-Commerce Assoc., 470 Mich. 460, 683 N.W.2d 587 (2004), also held that the plaintiff's claims against the snow-plowing contractor for negligent performance of his duties under the snow-removal contract were properly dismissed because the contractor owed no duty to the plaintiff that was separate and distinct from his contractual obligations. Teufel, supra at 429-430, 705 N.W.2d 164.
*555 Conversely, in 2006, a panel of this court, in Benton v. Dart Properties Inc., 270 Mich.App. 437, 443-444, 715 N.W.2d 335 (2006), held that MCL 554.139(1)(a) did impose a duty on a landlord to keep sidewalks free of ice and snow. The Benton Court concluded that outdoor sidewalks in an apartment complex constituted "common areas" under the statute and, thus, a landlord has a duty to take reasonable measures to ensure that the sidewalks are fit for their intended use, including removing ice and snow in a timely manner. Id. Noteworthy is the fact that the Teufel decision was not mentioned anywhere in Benton.
Following the Benton snow-covered sidewalk detour, this Court was presented with yet another case involving an icy, snow-covered parking lot. In Allison v. AEW Capital Mgt, LLP, unpublished opinion per curiam of the Court of Appeals, issued November 28, 2006 (Docket No. 269021) (Allison I), vacated by Allison v. AEW Capital Mgt, LLP, unpublished order of the Court of Appeals, entered January 19, 2007, the plaintiff, a tenant in the defendant's apartment complex, slipped and fell on ice and snow in the parking lot as he was attempting to reach his car. Id. at slip op. p. 1. The plaintiff filed suit, arguing that the defendant breached its statutory duty under MCL 554.139(1) and its common-law duty to warn and protect against this hazardous condition. Id. The Allison I Court declared a conflict with Teufel and concluded that but for the Teufel decision, which the panel admitted was binding under MCR 7.215(J)(1), it would have held that a landlord did indeed have a duty under MCL 554.139 to keep parking lots free from snow and ice. Id. at slip op. p. 2. The Allison I Court based its preferred holding, in part, on the decision in Benton, extending the Benton "common area" analysis from sidewalks to a parking lot, as well as the panel's contention that the reasoning in Teufel was flawed. Id. at slip op. pp. 2-3.
The Allison I decision necessitated a vote of the entire Michigan Court of Appeals to determine whether there was a conflict between Teufel and Allison I. After a vote of the entire Court, a conflict was not declared, Allison v. AEW Capital Mgt, LLP, unpublished order of the Court of Appeals, entered December 21, 2006, and Teufel appeared to be the reigning rule of the road. However, the plaintiff in Allison moved for reconsideration, a proper procedural tool by any party under MCR 7.215(I)(1) and (J)(7), and the Allison panel granted reconsideration and vacated its original opinion. Allison v. AEW Capital Mgt, LLP, unpublished order of the Court of Appeals, entered January 19, 2007. On reconsideration, the Allison II Court reissued its opinion and held that a landlord does have a statutory duty to keep a parking lot free of ice and snow. Allison II, supra.
The Allison II Court avoided the binding effect of Teufel by declaring that the Teufel Court's use of a footnote to substantively state that MCL 554.139 imposed no duty upon a landlord to remove ice and snow did not create a rule of law. Allison II, supra at 669-670, 736 N.W.2d 307. The Allison II Court reasoned, "Had our Court in Teufel intended to create a rule of law regarding the availability of the open and obvious danger doctrine when a landlord has statutory duties under MCL 554.139(1)(a) and (b), it would have done so in the body of the opinion rather than in a footnote." Id.
The Allison II Court relied on our Supreme Court's decision in Guerra v. Garratt, 222 Mich.App. 285, 289-292, 564 N.W.2d 121 (1997), to support its conclusion that if the Teufel Court wanted to create a rule of law regarding MCL *556 554.139, it should have included its analysis "in the body of the opinion rather than in a footnote." While I have immense respect for my distinguished colleagues on the Allison panels (and those on the Benton panel as well), I do not believe that the Guerra decision supports this proposition. Guerra concerned a previous decision in the case of Lemmerman v. Fealk, 449 Mich. 56, 534 N.W.2d 695 (1995), and whether footnote 15 in Lemmerman addressed the retroactivity of Lemmerman or articulated an exception to the rule of law expressed in Lemmerman. Guerra, supra at 289-292, 564 N.W.2d 121. Guerra did not speak directly to the issue whether a footnote can create a rule of law.
The use of footnotes is a long-established practice of this Court, often employed to express an additional legal proposition or contrary judicial holding without interrupting the flow of the opinion. The circumstances that cause a perspective or legal conclusion to be included in a footnote or within the body of the opinion, can vary from panel to panel and issue to issue. Further, the placement of a ruling in a footnote should not determine its precedential value. See Zsigo v. Hurley Med. Ctr., 475 Mich. 215, 234 n. 3, 716 N.W.2d 220 (2006) (KELLY, J., dissenting) (noting that "footnotes do sometimes set the state of the law"). Instead, the relevant question should be whether the footnote is dispositive or merely dicta. Dictum is defined as "`"[a] judicial comment made during the course of delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential. . . ."'" Dessart v. Burak, 252 Mich.App. 490, 496 n. 5, 652 N.W.2d 669 (2002), quoting People v. Higuera, 244 Mich.App. 429, 437, 625 N.W.2d 444 (2001), quoting Black's Law Dictionary (7th ed.). The Teufel footnote, which disposed of one of the plaintiff's arguments, was clearly not dictum. Therefore, it was binding on the Allison II Court. Ironically, the Benton opinion itself contains two footnotes that I consider to be legally significant, without which the opinion would lose a measure of import.
The Allison II Court also expressed a concern that the Teufel decision did not attempt to distinguish O'Donnell or even mention the O'Donnell case whatsoever in its analysis. But it is important to remember that O'Donnell involved a defective staircase in a resort cabin, with state and local ordinances applying as well, and the defendant was on notice of the defective condition. It did not involve ice and snow in a parking lot. Therefore, it is factually distinguishable. Further, as noted above, the Benton opinion did not discuss the Teufel decision anywhere.
For these reasons, I do not believe that the Allison II Court was correct in disregarding the binding effect of the Teufel decision; therefore, I must part ways with the majority decision, which concludes that the trial court erred in granting defendant's motion for summary disposition of plaintiffs' statutory claims because the Allison II decision controls in this case. Further, I am hopeful that this chronology will induce the cartographers within the Hall of Justice to provide a concrete ruling for litigants, landlords, the bench, and the bar regarding their rights and responsibilities when it comes to snow-covered surfaces, either sidewalks or parking lots, in the state of Michigan.
NOTES
[1] Because Carl Royce's claim is derivative in nature, we employ the singular term "plaintiff" to refer to Theresa Royce only.
[2] A tenant is an invitee of a landlord. Benton v. Dart Properties Inc., 270 Mich.App. 437, 440, 715 N.W.2d 335 (2006).
[1] I also agree with the majority's conclusion that a review of the record in this case does not clearly reveal whether the defendant was on notice of the condition of the parking lot. Therefore, it is appropriate for this panel not to address the notice issue.
[2] While I acknowledge that these unpublished opinions have no precedential effect under MCR 7.215(C)(1), they are used to show my agreement with the O'Donnell holding and the fact that I have followed O'Donnell on several occasions.