McKIM v FORWARD LODGING, INC

Docket No. 251498. Submitted March 2, 2005, at Grand Rapids. Decided May 10, 2005, at 9:10 a.m. Leave to appeal sought.

Katrina and Steven McKim brought an action in the Ogemaw Circuit Court against Forward Lodging, Inc., doing business as Quality Inn Forward Conference Center, seeking damages relating to injury suffered by Katrina McKim when she slipped and fell in the defendant's parking lot while she was trying, as a county paramedic, to attend to two people who were injured in slip and fall incidents in the parking lot. The court, Michael L. Baumgartner, J., granted summary disposition for the defendant, ruling that the icy condition of the parking lot was an open and obvious danger for which the defendant owed no duty to warn plaintiff Katrina McKim. The plaintiffs filed a motion for reconsideration, which the court denied as untimely. The plaintiffs filed a motion for relief from judgment, claiming that newly discovered evidence that had been presented in a federal district court case indicated that the defendant had created the icy condition when it used water to dislodge an ice dam on a roof. The court denied the motion. The plaintiffs appealed. In an unpublished order, entered March 25, 2004, the Court of Appeals, O'CONNELL, P.J., and WHITBECK and BORRELLO, JJ., ordered the parties to address on appeal the duty owed by a commercial business to a paramedic employed by the county who entered the premises in that capacity. In an unpublished order, entered February 24, 2005, the Court of Appeals, SAAD, P.J., and SMOLENSKI and COOPER, JJ., granted the plaintiffs' motion to supplement the record on appeal to include the evidence presented in the federal case.

The Court of Appeals *held*:

1. Katrina McKim, a paramedic, was an invitee on the property. The paramedic was on the defendant's property to attend to the injuries of a guest and of an employee of the commercial enterprise, thus providing a commercial benefit to the defendant. The paramedic's presence was directly tied to the commercial interests of the defendant and to the interests of the defendant in the injured guest and the injured employee. The defendant owed the heightened duty of care to the paramedic as an invitee.

2. The statutory fireman's rule, MCL 600.2927(1), prevents only a firefighter or a police officer from recovering from a landowner for injuries sustained in an official capacity on the landowners premises. The statute is clear and may not be extended to protect a landowner from suit by a county-employed paramedic.

3. The trial court improperly denied the plaintiffs' motion for relief from the order granting the defendant's motion for summary disposition because the plaintiffs created a question of material fact regarding the defendant's knowledge of the icy condition of the parking lot where the injuries occurred. The defendant's failure to disclose the maintenance activity that caused the icy condition in the parking lot prevented the plaintiffs from introducing evidence to the trial court until the motion for relief from judgment. The defendant's negligent maintenance and subsequent failure to remedy the icy parking lot surface created an unreasonably dangerous, unavoidable situation.

Reversed and remanded for further proceedings.

SAAD, P.J., dissenting, would affirm the trial court's decision, stating that the trial court was correct in determining that the icy conditions were open and obvious.

1. NEGLIGENCE — COMMERCIAL PREMISES — PREMISES LIABILITY — PARAMEDICS.

A paramedic on commercial premises to attend to the injuries of a guest and of an employee of the commercial enterprise provides a commercial benefit to the enterprise; the enterprise owes the paramedic the heightened duty of care owed an invitee.

2. NEGLIGENCE — PREMISES LIABILITY — FIREMAN'S RULE — PARAMEDICS.

The statutory fireman's rule prevents only a firefighter or a police officer from recovering from a landowner for injuries sustained in an official capacity on the landowner's premises; the statute is clear and does not extended to a county-employed paramedic (MCL 600.2927[1]).

*Skupin & Lucas, P.C.* (by *Joseph F. Lucas*), for the plaintiffs.

*Collison & Collison, P.C.* (by *Jeffrey C. Collison* and *Alexander D. Bommarito*), for the defendant.

Before: SAAD, P.J., and SMOLENSKI and COOPER, JJ.

COOPER, J. Plaintiff Katrina McKim[1] appeals on leave granted a trial court order granting defendant Forward Lodging, Inc.'s motion for summary disposition pursuant to MCR 2.116(C)(10) in this premises liability action. As there remains a question of material fact whether defendant breached its duty of care to plaintiff as an invitee, we reverse the trial court's order and remand for further proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Defendant's complex includes a hotel, conference center, and restaurant in West Branch, Michigan. At around 10:30 a.m. on the morning of January 6, 2001, a hotel guest, Verna Dolle, was injured when she slipped and fell on ice in defendant's north parking lot. An ambulance was summoned and two paramedics arrived on the scene. Several of defendant's employees came to Ms. Dolle's assistance, including Jana Healey, the assistant manager of defendant's restaurant. As Ms. Healey stepped off the sidewalk to cross the north parking lot, she also slipped and fell, breaking her ankle. At that time, a second ambulance was summoned and plaintiff arrived on the scene. After assessing Ms. Healey's condition, plaintiff walked across the parking lot to her ambulance to obtain the appropriate medical equipment. On the way, plaintiff slipped and fell on the ice, hitting her head on the pavement. It is undisputed that the north parking lot had not been salted before Ms. Dolle fell. However, there was conflicting testimony on many issues pertaining to the condition of the north parking lot at the time of these falls. The witnesses presented different accounts regarding the visibility of

---

[1] As Steven McKim's claims are derivative from those of his wife, we will refer to Ms. McKim as the singular plaintiff.

the ice on the asphalt surface, when the parking lot was actually salted, and whether plaintiff was warned to be careful of the ice.[2]

Plaintiff subsequently filed the current premises liability action. On May 8, 2003, the trial court granted defendant's motion for summary disposition of plaintiff's claims. The trial court found that defendant did not have a duty to warn plaintiff of the icy conditions, as the danger was open and obvious. One month later, the trial court denied plaintiff's motion for reconsideration as untimely. Plaintiff's motion was based upon the affidavit of an architect stating that the hotel's roof design was defective, as it allowed water from melting snow to discharge onto the cooler parking lot surface, contributing to the formation of ice. Subsequently, the trial court denied plaintiff's motion for relief from judgment based on newly discovered evidence[3] and fraud.[4] Ms. Dolle, as a resident of Ohio, had filed a negligence action in federal court. Evidence presented in that case revealed that defendant was not only aware of the icy conditions in the north parking lot, but had actually created the dangerous condition on the previous day. Defendant's employees spent several hours spraying hot water to dislodge an ice dam on the roof. There was evidence that mist from this activity coated the north parking lot and that the water poured over the roof created giant icicles on that side of the building.

---

[2] The conflicting testimony regarding the condition of the parking lot, whether actions had been taken to remedy the icy conditions, and whether defendant warned plaintiff of the danger will be discussed in detail later.

[3] MCR 2.612(C)(1)(b) ("Newly discovered evidence which by due diligence could not be discovered in time to move for a new trial under MCR 2.611(B).").

[4] MCR 2.612(C)(1)(c) ("Fraud (intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party.").

However, defendant never revealed this maintenance activity during plaintiff's case.[5]

## II. DUTY OF CARE OWED TO A PARAMEDIC ON HOTEL PROPERTY

In granting leave to appeal, this Court ordered the parties "to address the issue of the duty owed by defendant, as a private business or commercial premises owner, to plaintiff given her status upon entry onto defendant's premises as a paramedic or emergency medical responder employed by the county."[6] The parties were directed not to assume that plaintiff was an invitee.[7] Plaintiff contends that she was an invitee on the premises. As plaintiff was summoned to care for an injured guest, plaintiff contended that she should receive the same protection as that guest. Defendant, however, contends that plaintiff was a licensee and that her right to recovery should be limited by the "fireman's rule."

Determining plaintiff's status on the land is especially important, as the possessors of land do not owe the same duty of care to all who enter.

> A "licensee" is a person who is privileged to enter the land of another by virtue of the possessor's consent. A landowner owes a licensee a duty only to warn the licensee of any hidden dangers the owner knows or has reason to know of, if the licensee does not know or have reason to

---

[5] We granted plaintiff's renewed motion to supplement the record on appeal to include the evidence presented in the federal case. *McKim v Forward Lodging, Inc*, unpublished order of the Court of Appeals, entered February 24, 2005 (Docket No. 251498). This evidence will also be discussed in further detail later.

[6] *McKim v Forward Lodging, Inc*, unpublished order of the Court of Appeals, entered March 25, 2004 (Docket No. 251498). However, such wording did not prohibit the parties from arguing that plaintiff was an invitee on defendant's premises.

[7] *Id.*

know of the dangers involved. The landowner owes no duty
of inspection or affirmative care to make the premises safe
for the licensee's visit. Typically, social guests are licensees
who assume the ordinary risks associated with their visit.[8]

Invitees, however, are owed a higher duty of care. "An
'invitee' is 'a person who enters upon the land of
another upon an invitation which carries with it an
implied representation, assurance, or understanding
that reasonable care has been used to prepare the
premises, and make [it] safe for [the invitee's] recep-
tion.' "[9] In Michigan, the definition of "invitee" has
been limited to one who is invited onto the land for a
commercial purpose:

> [W]e conclude that the imposition of additional expense
> and effort by the landowner, requiring the landowner to
> inspect the premises and make them safe for visitors, must
> be directly tied to the owner's commercial business inter-
> ests. It is the owner's desire to foster a commercial advan-
> tage by inviting persons to visit the premises that justifies
> imposition of a higher duty. In short, we conclude that the
> prospect of pecuniary gain is a sort of quid pro quo for the
> higher duty of care owed to invitees. Thus, we hold that the
> owner's reason for inviting persons onto the premises is
> the primary consideration when determining the visitor's
> status: In order to establish invitee status, a plaintiff must
> show that the premises were held open for a *commercial*
> purpose.[10]

What status to grant a county-employed paramedic
responding to an emergency on private property is an

---

[8] *Stitt v Holland Abundant Life Fellowship*, 462 Mich 591, 596; 614
NW2d 88 (2000), citing *Wymer v Holmes*, 429 Mich 66, 71 n 1; 412 NW2d
213 (1987), and *Preston v Sleziak*, 383 Mich 442, 451; 175 NW2d 759
(1970).

[9] *Id.* at 596-597, quoting *Wymer, supra* at 71 n 1 (alterations in
original).

[10] *Id.* at 604 (emphasis in original).

issue of first impression for this Court. As noted above, defendant asks this Court to determine that a paramedic is a licensee and to extend the "fireman's rule" to limit a paramedic's right to recovery. In *Kreski v Modern Wholesale Electric Supply Co*,[11] the Michigan Supreme Court adopted the common-law "fireman's rule."

> Thus, as a matter of public policy, we hold that fire fighters or police officers may not recover for injuries occasioned by the negligence which caused their presence on the premises in their professional capacities. This includes injuries arising from the normal, inherent, and foreseeable risks of the chosen profession.[12]

The public policy arguments in favor of adopting such a rule included the fact that the very nature of the service provided by police officers and firefighters is to confront dangerous situations for the protection of the public.[13] As they respond to emergency situations, "[f]ire fighters and police officers often arrive at unpredictable times and may enter portions of the premises not open to the public."[14] It would, therefore, be unreasonably burdensome to require landowners to prepare their premises for the arrival of these emergency personnel.[15] Furthermore, limiting the recovery of firefighters and police officers to worker's compensation benefits fairly spreads the cost of injury onto the public.[16]

Under the common-law rule, there may have been room to extend the limitation on recovery to paramed-

---

[11] *Kreski v Modern Wholesale Electric Supply Co*, 429 Mich 347; 415 NW2d 178 (1987).

[12] *Id.* at 372.

[13] *Id.* at 367.

[14] *Id.* at 368, citing Prosser & Keeton, Torts (5th ed), § 61, p 431.

[15] *Id.*

[16] *Id.* at 369-370.

ics; however, we need not decide that issue.[17] The Michigan Legislature abolished the common-law rule[18] and enacted a statutory version.[19] With certain delineated exceptions and limitations, the statutory "fireman's rule" prevents *"a firefighter or police officer* who seeks to recover damages for injury or death arising from the normal, inherent, and foreseeable risks of his or her profession while acting in his or her official capacity" from recovering from a landowner for his or her injuries.[20] According to the clear and unambiguous language of the statute, only firefighters and police officers have a limited right to recover for injuries. There is no room for interpretation, and we must reject defendant's request to extend the limitation.[21]

We also reject defendant's contention that plaintiff should be treated as a licensee. We first note that plaintiff responded to a call from defendant to assist a hotel guest and an employee. Both of these parties were clearly invitees on defendant's property. Ms. Dolle, as a paying guest of the hotel was obviously on the premises for a commercial purpose.[22] Before the *Stitt* commercial

---

[17] Even though it is unnecessary to determine whether the common-law "fireman's rule" could be extended to limit a paramedic's right to recovery, we note that such a limitation would be inappropriate in this case. Coming to the assistance of injured people, is not, by its nature, a dangerous job. Furthermore, plaintiff did not arrive on defendant's premises at an unpredictable time and venture into areas closed to the public. Plaintiff arrived during normal business hours and remained in a parking lot open to the general public. See 2 Restatement Torts, 2d, § 345(2), p 227 (limiting the application of the common-law "fireman's rule" when the public officer is injured on a portion of the land open to the general public).

[18] MCL 600.2965.

[19] MCL 600.2967.

[20] MCL 600.2967(1) (emphasis added).

[21] *People v Morey*, 461 Mich 325, 329-330; 603 NW2d 250 (1999).

[22] See *Upthegrove v Myers*, 99 Mich App 776, 779; 299 NW2d 29 (1980) (finding that a hotel has a duty to protect its guests, as business invitees, from injury).

purposes test was introduced into Michigan jurisprudence, employees were considered invitees of the landowner.[23] We see no need to change the status of employees under the commercial purposes test. An employee furthers a landowner's pecuniary gain and, therefore, is clearly on the land for the owner's commercial purpose. Beyond owing its hotel guest and employee the heightened duty of care of an invitor to an invitee, defendant also had a special relationship with both of these parties, obligating defendant to provide aid and assistance not available to the general public. It is well settled that a special relationship exists between an innkeeper and his or her guests and between an employer and his or her employee mandating a heightened standard of care.[24]

Plaintiff contends that she is entitled to the same standard of care as those she was summoned to assist. We agree. Defendant held its property open to the general public for commercial purposes. On the property, defendant ran a hotel, restaurant, and conference center. Integral to defendant's ability to conduct its business was the provision of a parking lot open to everyone using these facilities. It is true that plaintiff was not on the property to make use of any of the services provided by defendant. However, there need not be a direct commercial gain from the particular visitor to be considered an invitee. In determining to limit the highest standard of care to business invitees alone, the Michigan Supreme Court adopted the reasoning in the Florida Supreme Court decision of *McNulty v*

---

[23] See, e.g., *Riddle v McLouth Steel Products*, 440 Mich 85; 485 NW2d 676 (1992) (treating an injured employee as an invitee when determining the landowner's duty of care).

[24] See *Graves v Warner Bros*, 253 Mich App 486, 494; 656 NW2d 195 (2002) (citing a long history of case law upholding these special relationships).

*Hurley*.[25] In *McNulty*, the court found that, in order to become an invitee,

> "the person entering the premises, i.e. the invitee, must have done so for purposes which would have benefited the owner or occupant of the premises, i.e. the invitor, or have been of mutual benefit to the invitee and the invitor. And as we view it this benefit must be of a material or commercial rather than of a spiritual, religious, or social nature."[26]

Therefore, the Michigan Supreme Court found "a business purpose or a business or commercial benefit to the landowner as a necessary requirement in order for a visitor to be deemed an invitee."[27]

Plaintiff's presence on the property provided a commercial benefit to defendant. She provided emergency medical services in an open public area to fellow invitees on the property. Defendant was required to seek plaintiff's medical services both because Ms. Dolle and Ms. Healey were invitees and because defendant shared a special relationship with the injured parties. As plaintiff's presence was directly tied to those interests, we find that she was also an invitee on defendant's property and was, therefore, owed a heightened duty of care as an invitee.[28]

---

[25] *McNulty v Hurley*, 97 So 2d 185 (Fla, 1957).

[26] *Stitt, supra* at 605, quoting *McNulty, supra* at 188.

[27] *Id.*

[28] Plaintiff contends that she became an invitee by virtue of the emergency medical services act, MCL 333.20901 *et seq.*, which requires a paramedic to respond to all emergency situations within his or her response area, MCL 333.20921(1)(b). As the emergency situation involved invitees of defendant, plaintiff argues that she should receive the same protection as those she was summoned to assist. However, the statute is silent regarding a landowner's duty to paramedics on its property. As we have determined on other grounds that plaintiff was an invitee on defendant's property, we need not consider plaintiff's contention in further detail.

III. OPEN AND OBVIOUS DOCTRINE

Plaintiff contends that the trial court erroneously granted defendant's motion for summary disposition pursuant to MCR 2.116(C)(10) as there remained a question of material fact whether defendant breached its duty of care. This Court reviews a trial court's determination regarding a motion for summary disposition de novo.[29] A motion under MCR 2.116(C)(10) tests the factual support of a plaintiff's claim.[30] "In reviewing a motion for summary disposition brought under MCR 2.116(C)(10), we consider the affidavits, pleadings, depositions, admissions, or any other documentary evidence submitted in [the] light most favorable to the nonmoving party to decide whether a genuine issue of material fact exists."[31] Summary disposition is appropriate only if there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law.[32] We review the trial court's denial of plaintiff's motion for relief from judgment for an abuse of discretion and the underlying findings of fact for clear error.[33]

"In general, a premises possessor owes a duty to an invitee to exercise reasonable care to protect the invitee from an unreasonable risk of harm caused by a dangerous condition on the land."[34] The open and obvious

---

[29] *Beaudrie v Henderson*, 465 Mich 124, 129; 631 NW2d 308 (2001).

[30] *Auto-Owners Ins Co v Allied Adjusters & Appraisers, Inc*, 238 Mich App 394, 397; 605 NW2d 685 (1999).

[31] *Singer v American States Ins*, 245 Mich App 370, 374; 631 NW2d 34 (2001).

[32] *MacDonald v PKT, Inc*, 464 Mich 322, 332; 628 NW2d 33 (2001).

[33] *People v McSwain*, 259 Mich App 654, 681; 676 NW2d 236 (2003).

[34] *Lugo v Ameritech Corp*, 464 Mich 512, 516; 629 NW2d 384 (2001), citing *Bertrand v Alan Ford, Inc*, 449 Mich 606, 609; 537 NW2d 185 (1995).

doctrine presents a major exception to the general rule. This Court recently described the open and obvious doctrine in Michigan as follows:

> An invitor is protected from liability, however, if the danger is open and obvious.[23] Michigan's open and obvious doctrine was initially based on the Restatement of Torts.[24] Under the Restatement approach, a premises possessor is not liable for harm caused by known or obvious dangers "unless the possessor should anticipate the harm despite such knowledge or obviousness."[25] A possessor must still warn or protect an invitee against open and obvious dangerous conditions when the possessor should anticipate the harm.[26]
>
> However, in *Lugo v Ameritech Corp*, our Supreme Court replaced the Restatement approach with a special aspects analysis as follows:
>
> > "[T]he general rule is that a premises possessor is not required to protect an invitee from open and obvious dangers, but if special aspects of a condition make even an open and obvious risk unreasonably dangerous, the premises possessor has a duty to undertake reasonable precautions to protect invitees from that risk."[27]
>
> A special aspect exists when the danger, although open and obvious, is unavoidable or imposes a "uniquely high likelihood of harm or severity of harm."[28] Pursuant to *Lugo*, a court must "focus on the objective nature of the condition of the premises at issue, not on the subjective degree of care used by the plaintiff" or other idiosyncratic factors related to the particular plaintiff.[29]
>
> The Supreme Court recently solidified this ... legal premise in *Mann v Shusteric Enterprises, Inc.* ... The Supreme Court held that courts must examine whether a danger is open and obvious, and whether special aspects render an open and obvious condition unreasonably dangerous, from the perspective of "a reasonably prudent person."[33] Whether a dangerous condition is open and obvious is "not dependent on the characteristics of a particular plaintiff ...."[34]

[23] *Lugo, supra* at 516, citing *Riddle* [*supra* at 96].

[24] *Mann v Shusteric Enterprises, Inc*, 470 Mich 320, 336-337; 683 NW2d 573 (2004) (CAVANAGH, J., concurring in part and dissenting in part), citing *Lugo, supra* at 528 (CAVANAGH, J., concurring), *Bertrand* [*v Alan Ford, Inc*, 449 Mich 606, 609; 537 NW2d 185 (1995)], and *Perkoviq v Delcor Homes[—]Lake Shore Pointe, Ltd*, 466 Mich 11, 16; 643 NW2d 212 (2002).

[25] 2 Restatement Torts, 2d, § 343A, p 218. See also *Mann, supra* at 337 (CAVANAGH, J., concurring in part and dissenting in part).

[26] 2 Restatement Torts, 2d, § 343A, comment f, p 220.

[27] *Lugo, supra* at 517.

[28] *Id.* at 518-519.

[29] *Id.* at 523-524.

\* \* \*

[33] [*Mann, supra*] at 328-329.

[34] *Id.* at 329 n 10.[35]

The open and obvious danger doctrine is equally applicable in those cases involving the accumulation of ice and snow on a winter day.[36] As early as 1975, the Michigan Supreme Court found that a landowner could be liable for injuries caused by the natural accumulation of ice and snow. In *Quinlivan v The Great Atlantic & Pacific Tea Co*,[37] the Supreme Court held:

[35] *Bragan v Symanzik*, 263 Mich App 324, 331-332; 687 NW2d 881 (2004) (some alterations in original).

[36] *Kenny v Kaatz Funeral Home, Inc*, 264 Mich App 99, 106-107; 689 NW2d 737 (2004).

[37] *Quinlivan v The Great Atlantic & Pacific Tea Co, Inc*, 395 Mich 244; 235 NW2d 732 (1975).

[W]e reject the prominently cited notion that ice and snow hazards are obvious to all and therefore may not give rise to liability. While the invitor is not an absolute insurer of the safety of the invitee, the invitor has a duty to exercise reasonable care to diminish the hazards of ice and snow accumulation. . . . As such duty pertains to ice and snow accumulations, it will require that reasonable measures be taken within a reasonable time after an accumulation of ice and snow to diminish the hazard of injury to the invitee.[38]

More recently, the Supreme Court found in *Mann v Shusteric Enterprises, Inc*:[39]

Thus, in the context of an accumulation of snow and ice, *Lugo* means that, when such an accumulation is "open and obvious," a premises possessor must "take reasonable measures within a reasonable period of time after the accumulation of snow and ice to diminish the hazard of injury to [plaintiff]" only if there is some "special aspect" that makes such accumulation "unreasonably dangerous."[40]

Pursuant to *Mann*, this Court must apply the open and obvious danger doctrine and principles regarding special aspects to all premises liability actions, including those involving the accumulation of black ice.[41] A landowner has a duty to inspect the premises and "make any necessary repairs or warn [invitees] of any discovered hazards."[42] Furthermore, the duty of a landowner

---

[38] *Id.* at 261.

[39] *Mann, supra.*

[40] *Id.* at 332 (alteration in original). *Mann* clarified the *Quinlivan* Court's position that not all hazardous ice and snow conditions are obvious to all. See *Kenny, supra* at 107, quoting *Mann, supra* at 333 n 13.

[41] *Kenny, supra* at 107. See also *Corey v Davenport Coll of Business (On Remand)*, 251 Mich App 1, 7-8; 649 NW2d 392 (2002) (finding that the *Quinlivan* analysis had been subsumed by the open and obvious rule created in *Lugo*).

[42] *Stitt, supra* at 597. See also *O'Donnell v Garasic*, 259 Mich App 569, 573; 676 NW2d 213 (2003) (a landowner must use reasonable care "to prepare the premises and to make them safe" for invitees).

to take reasonable measures within a reasonable time following the accumulation of ice and snow to reduce the risk of injury remains intact where the accumulation is not open and obvious or where special aspects exist.[43]

The parties presented conflicting evidence regarding the icy conditions in defendant's north parking lot on the morning of January 6, 2001. One witness claimed that the parking lot was a mix of ice and snow, one that the lot merely appeared wet, and yet another claimed that the lot was completely covered by a sheet of ice. Other witnesses asserted that the ice was not visible because it was covered by snow. Regardless of this disagreement, the trial court properly found that the condition was open and obvious under the circumstances. Plaintiff arrived on the scene of a multiple-victim slip and fall accident on a cold winter day in northern Michigan. Given that two people had fallen and no one claimed that the north parking lot was clear and dry, plaintiff should have realized that ice was present. However, even if the icy condition of the north parking lot was open and obvious, the fact that defendant created the situation and failed to take immediate remedial action is a special aspect rendering the condition unreasonably dangerous.

Plaintiff presented evidence that defendant created the icy condition in the north parking lot on the day prior to the accident by spraying hot water on the roof to dislodge an ice dam. In depositions taken in the federal action brought by Ms. Dolle, defendant's general manager and former maintenance manager both

---

[43] *Kenny, supra* at 107. See also *Riddle, supra* at 93 (finding that *Quinlivan*'s holding that reasonable measures be taken to eliminate accumulations of ice and snow is part of the correct definition of the law regarding a landowner's duty of care to invitees).

admitted that such action was taken on the roof above the restaurant kitchen on January 5, 2001. However, both witnesses claimed that any water run-off flowed over onto the east parking lot. Another former employee, Clifford Brody, testified that he witnessed the maintenance activity. While standing outside an employee entrance on the north side of the building, Mr. Brody watched giant plumes of steam rise from the roof where the maintenance men were attempting to dislodge the ice. The water running over the edge of the roof created giant icicles like a lava flow along the gutter downspouts on the north side of the building. Mr. Brody even slipped, but did not fall, as the north parking lot became slippery throughout the day. Furthermore, there was evidence that there was a brisk northwesterly wind on January 5, 2001, which would have blown the mist from the plume of steam over the north parking lot. When the maintenance department completed its activities on the roof, Mr. Brody stated that he informed employees of the icy conditions and advised them to salt the north parking lot. However, the former maintenance manager admitted in his deposition that no salt was spread in the parking lot until after Ms. Dolle's fall.[44]

Plaintiff was unable to introduce this evidence to the trial court until her motion for relief from judgment, as defendant never disclosed this activity in her case. Defendant asserted in answers to interrogatories that it had no knowledge of the icy conditions until Ms. Dolle's fall. The first indication that defendant had knowledge of and actually created the condition came from a July 8, 2003 affidavit signed by probate judge Eugene Tur-

---

[44] There was conflicting evidence regarding the exact time this salt was actually applied. Whether the salt was applied before or after plaintiff's arrival has no effect on our determination of this case, however.

kelson. Judge Turkelson is Ms. Dolle's nephew. On July 4, 2001, he met Ms. Healey in a local store. Ms. Healey told the judge about her conversation with Mr. Brody regarding the maintenance activities on the kitchen roof on the day before her accident.

Based on this evidence, we find that plaintiff created a question of material fact regarding defendant's knowledge of the icy condition of the north parking lot. Defendant's own activities created the icy conditions. Furthermore, defendant's maintenance men were placed on notice by Mr. Brody that their activities had led to an accumulation of ice, and yet took no action to remedy the situation within a reasonable time. Defendant's negligent maintenance of the property and subsequent, and apparently purposeful, failure to remedy the situation created an unreasonably dangerous, unavoidable situation. Defendant's patrons had full use of the north parking lot. Hotel guests who parked in the lot on the previous day when it was clear and dry would be forced to traverse the icy and unsalted lot to return to their vehicles. These patrons, such as Ms. Dolle, would be essentially trapped by the condition. Similarly, plaintiff was unable to avoid the dangerous condition as she was summoned to the aid of Ms. Dolle and Ms. Healey in the icy lot. Accordingly, the trial court improperly denied plaintiff's motion for relief from the order granting defendant's motion for summary disposition.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

SMOLENSKI, J., concurred.

SAAD, P.J. (*dissenting*). Because I agree with the trial court that the icy conditions were open and obvious, I

would affirm, under the clear application of the rule of law articulated in *Lugo v Ameritech Corp,* 464 Mich 512, 516; 629 NW2d 384 (2001), and *Mann v Schusteric Enterprises, Inc,* 470 Mich 320; 683 NW2d 573 (2004).